The first case on the docket is Q-19-0440. Michelle P. claims the tenants of the Aurora Housing Authority, a municipal corporation, and emails regularly to the official capacity as director of the Aurora Housing Authority, Mr. Barry Weiler, on behalf of the Aurora Housing Authority, with co-counsel Rick Kedish. This case involves the Aurora Housing Authority's appeal of the determination of the court below that Mrs. Keyes is entitled to certain housing benefits or a cash amount associated with the allegation that those benefits are due to her in a case in which it has been determined after two hearings that she is not entitled to those benefits. Mr. Weiler, let me ask you a couple of special questions. Sure. Do you agree that the principles of due process would apply to termination? We do. And those due process considerations, though, apply to a pre-termination hearing. And that is established in the Goldberg case with which the Housing Authority is in agreement. And what that determines is that that is not a hearing in which it is even necessary to create a record of that termination. It was only to provide the beneficiary, the recipients of the benefits, with the opportunity to appear and be heard in initial determination to determine that there is sufficient cause to go forward with the termination. Let me ask you this. So if we agree that generally federal constitutional principles of due process would apply here, did any of the trial courts here ever rule that the plaintiff's due process rights were violated at any time? Never did. Never did. So why was the case remanded then? The case was remanded because the Lipscomb case was determined after this hearing, after the initial pre-termination hearing was determined, but before the administrative review was filed. In Lipscomb, the court had made a determination that there were certain mandatory bases for termination of benefits and certain discretionary. The discretionary determinations included things such as whether or not there were mitigating circumstances. And Judge Ackerman had made a determination that based upon the record before him, he did not see whether or not there was a – that there was not a record to his satisfaction that there was a consideration of the mitigating circumstances. So it was remanded. Well, it was a procedural defect than a problem with the ruling itself. That's correct. So if we look at that ruling in terms of what is required by Goldberg, Goldberg was a case in which there was a pre-termination or that there was a termination of benefits to which the recipient could respond by submitting through either a caseworker or by herself, his or herself, with a written statement to challenge that pre-determination. What Goldberg said is that you have to get more than that. You have to at least allow that person to appear in person to provide evidence that would prevent an erroneous termination. And in this case, that did occur. And there were three bases for that determination. One was that there had not been cooperation in allowing inspections. After two or three attempts to inspect it, the inspectors were not permitted to go into the apartment. The second was that she had failed after several requests to provide information with respect to her continued eligibility. And then the third was with respect to criminal drug-related activity that was emanated from that property. How would you respond to this argument Mr. O'Reilly seems to be making in his brief? The trial court had vacated the hearing, remanded it for further hearing, as you've alluded to, perhaps for procedural reasons, not on the merits. And he's saying that the fact that the plaintiff was ultimately provided with a sufficient hearing should not operate to retroactively terminate from her assistance. How do you respond to that? He's arguing it was a retroactive termination of the benefits. Well, but that's not the case. The benefits were terminated administratively in September with a determination that was made administratively that she had not complied with the eligibility provisions, the inspection provisions, and that the house was being used for drug activity. That determination was made in September. She was then notified that her benefits were terminated as of October of 2015, as the end of October 2015. But before the effective date of that termination, she was provided with a hearing to provide information that would give the authority assurance that their determination was correct, that there was no reason to suspect that the termination was erroneous. So, in other words, the procedural deprivation is not what caused her to lose her benefits. That's correct. That's correct. So there's really no harm to her. There was no harm. And so she has had significant due process, has had two hearings, has had administrative review on two separate records that have been provided to the court, and the determination was that she was not entitled to those benefits, that she was never entitled to them. Counsel, did either of the hearing officers or the trial courts ever rule that she was entitled to the benefits? That's correct. Or that they were improperly terminated. That's absolutely correct. Counsel, didn't a trial court rule that she was entitled to the benefits that she had failed to receive prior to the second hearing? I believe that that's what Judge Ackerman had in mind, that he would say that there was nothing, I think his order said, that it's nothing to prevent me from saying that she's entitled to the benefits during the interim between the remand and the date of his order. And you didn't move for reconsideration of that order, the trial court's order, did you? I believe we had argued that, that that was raised. Her entitlement to benefits was raised in a responsive brief to a motion to. So you believe you raised that? To receive that. But, yes, so that was actually argued, and it was also presented to Judge Fenis at the time that Judge Fenis made the ultimate determination. So that was again, that that was again argued as her entitlement to those benefits. And with respect to that, you did not file an interlocutory appeal of that judge's ruling? Well, that, we did not file an interlocutory appeal because the amount of those benefits had not been determined. The amount of those benefits were determined in the last order that was entered in this case. And it's from that order that we are now taking the appeal. So there was never a final order to appeal from. And we did not seek an interlocutory appeal, but that was not done. What is the impact? Pardon me? Consideration of the case law, what is the legal impact of Judge Fenis' ruling that ultimately on the merits the plaintiff is not entitled to the benefits? How does that enter into our consideration? Okay. That, we believe, is determinative. Okay. That there has been no appeal from that determination that the termination of her benefits was a correct administrative action. The correctness of that determination has never been appealed and no action against that hearing or to set aside that determination has ever been filed. So as a matter of the law of the case, as we sit here today, that's a final order. Okay. So it has been determined that she was, that that termination of her benefits that was effective as of October 22nd of 2015 was correct, that she was not entitled to benefits from that time. So now to come and say that she is now entitled to those benefits for some reason during the interim, we believe is incorrect. So what we're saying is that she – Are you aware of the Supreme Court case of Carey v. Ficus? Pardon me? Are you aware of the Supreme Court case of Carey v. PIPHUS? That was – The United States Supreme Court case. Yes. And I'm going to probably ask Mr. Morelli the same question. In that case, the United States Supreme Court held – this is apropos to your point about the ultimate decision. Right. The U.S. Supreme Court held that the students who were suspended from school for misbehavior without due process were entitled – were not entitled to damages where had the proper procedures been followed, they would have been suspended anyway. So is that sort of what you're saying? That's – that's exactly our – that's exactly our point. So no more. Right. And if she were – that there is a procedure by which she could seek relief in the interim, and that is by way of injunction under the Administrative Review Act under 53111A, is that she can seek a stay of enforcement of those terminations. That requires a showing that injunctive relief is – is appropriate. And one of the three criteria for that is that showing that she has a reasonable – she has a reasonable basis for success on the merits of the case. When that request was made, there had already been a determination after the – there had already been two determinations that she was not successful on the merits and that the merits of that case have never been – have never been overruled. They have never been reversed. So the merits of the case go way back to the administrative decision that was made in September of 2015 for which she was given an administrative – a pre-termination hearing. That termination hearing went forward on the same evidence that the court eventually indicated that that was appropriate. So even though she had – that she had an interim period where she had no benefits, the ultimate conclusion is that she was never entitled to those benefits. And so now to say, well, give her those benefits even though that she was not entitled to them is an anathema to the housing authority. And if we look at what the gravamen of – what the gravamen of Goldberg was, is that when you balance the considerations with respect to terminating the benefits of a welfare recipient, which is general subsistence, and you balance that against the fiscal responsibilities of the government to provide that assistance and the burden of giving that pre-termination hearing, just let that person come in and speak for themselves, that all of that balancing militates against the government terminating those benefits without allowing the person to come in and say – and speak their piece. In this case, there's a little bit of difference in the balance of what is happening here. These are supplemental benefits for housing, and you have to balance the housing authority's responsibility to both the community and to the recipient. And here there was the situation in which her eligibility was determined to have – in addition to the fact that there were complaints in the community that this house was providing dangerous drugs. Up to – from four to 13 packets of heroin were taken off of the people who were found to have – Well, that's the basis for her termination. Yeah, well, that was one of the bases, yes. And so when you compare those criteria, the housing authority is in a little different position than what the administrators of the welfare – because there's a – what Goldberg found is that there was a kind of commitment benefit to society by making sure that people were not destitute, okay? And that what was at issue is, was that person really destitute? Did they have the basic qualifications? And it was easy to come in and let that person speak for themselves about whether or not they continued to be qualified. It didn't take that much. In this case, there are different public interests at stake, okay, the next-door neighbors, et cetera, that have to live next to this and that, and whether or not the proliferation of heroin in the community is going to be permitted. So, you know, we believe – Sorry. No, it's just that if there was – there is no entitlement to benefits here. And now to say that as a post-hearing remedy, that she is going to be paid for benefits to which she ultimately is not entitled, after having been given that due process, we think is an error and should be reversed. Okay, thank you, sir. We'll have an opportunity for rebuttal. Mr. Rowne. Please, the Court. Good morning, sir. There are some facts that are of record but are not addressed in the briefs. Michelle Key was suffering from a mental illness. She was living in an apartment provided by the Rural Housing Authority. That apartment was taken over by some friends of hers, and they were – it was not Michelle Key. No one ever thought Michelle Key was selling drugs out of the apartment. It was these people who had taken over her apartment. But her name was on the lease. Her name – she was the leaseholder. While they're selling drugs, she's cowering in her bedroom. There were, in fact, two hearings, two separate hearings. Judge Ackerman vacated the first hearing because the AHA, as they were required to do, didn't provide an adequate record. So he vacated. And, you know, I've looked up the definition of vacate in Black's Law Dictionary. I'm not going to read that to you. But that – as though that first hearing didn't exist, he remanded for a new hearing, and that's what she got. She got a new hearing. That's right, but let me ask you this. What was the reason Judge Ackerman remanded it? Was it because it seemed to be he felt that they hadn't considered some more recent authority and there might have been a defect in the hearing as opposed to that the decision was erroneous? Wasn't it for a technical reason? It was for a technical reason, but he couldn't – based on what AHA gave him, he couldn't make a ruling as to whether she had received an adequate hearing. So he wanted to make sure that she got an adequate hearing. And the hearing, the second hearing, was in front of a different hearing officer. One of the things we raised was that the first hearing officer was, in fact, the person who had decided that Michelle Keys should be terminated or at least should be terminated. And that's one of the things that they don't get to do. So he remanded it for a totally new hearing. And the only reason given by the second hearing officer was the drug dealing out of Michelle Keys' unit. Didn't even mention the failure to allow inspections as required. Didn't mention the other things. And I think the reason for that was Michelle Keys' mental illness. Michelle Keys was at the second hearing, and she spent the whole hearing with her back to the proceedings, never said a word. I didn't call her because I just wouldn't be able to. Mr. Rilani, let me ask you this. The cases, though, seem to draw a distinction between a situation where somebody loses their benefits because of the deprivation of due process versus when somebody loses their benefits due to their own conduct. Mr. Weiler seems to be arguing ultimately the court found a defendant that should have been terminated because of the conduct, not because there was a due process violation. So how do you address that, that he's saying ultimately the court upheld the termination as being justified due to the plaintiff's conduct? What's your response to that? Well, it wasn't actually her conduct. It was her lack of calling the police because she wasn't doing her job. That was conduct. She allowed it to happen. I mean, the basis for the termination was because of her conduct or her failure to call the police. Well, it was her failure to call the police. I think if you say she allowed it to happen, I don't think that's accurate. I think it happened, and she didn't take steps to stop it from happening, but that was as a result of her mental illness. And was this brought out in the hearing before Judge Adler? It was brought out in the hearing in front of Judge Ackerman, and if I remember correctly, it was brought out when we argued in front of Judge Finneas. And as we're aware, the Americans with Disabilities Act requires that allowances be made, and Judge Finneas didn't think that that was sufficient to allow her to stay. And his opinion was well-reasoned and well-thought-out, and I didn't think that would get anywhere with an appeal. I didn't want to file a frivolous appeal on that. And besides, by then, she had moved out and was living in a house that is owned by her mother that had been used as a rental property. So your appeal today focuses only on what? We didn't bring the appeal. I'm sorry, you're correct. The housing authority. You're correct. The housing authority brought the appeal. Yes. Their appeal focuses on the fact that the procedural snaggle, if you will, or the procedural, regardless, she was not entitled to the benefits. It's akin to what Justice Hudson was saying about Cary v. Pippus, with the kids in the school, that even though that they were suspended, even if there were damages, they were to be suspended anyway. So no harm, no foul, basically. Isn't that the same here? No. Why? Because I think those students were looking for damages. Well, isn't she looking for damages? She's not looking for damages. She's looking to collect what she was entitled to. That's the question. How was she entitled to it? She was entitled to it because she had been awarded it, and it cannot be taken from her absent a hearing where she is allowed due process. So what I think the AHA is really arguing here is that the deprivation of her housing benefits should be retroactive. Right. And retroactive to when? Retroactive to when those so-called friends of hers or guests of hers were selling drugs out of her apartment, retroactive to the first determination from the Housing Authority. Wouldn't it be retroactive to the 31st of October? Is that the date of the second hearing? Yeah. Or the first hearing, to terminate on October 31st because of violations. No. No, it shouldn't be retroactive to then because on that particular date, nobody knows. There wasn't enough for Judge Ackerman to determine that she had been allowed due process. I think that her right, her entitlement to that housing benefit ends when she has a hearing where she's allowed due process and the hearing officer at that hearing determines that her benefits should end. And that's the second hearing. And we're not arguing beyond the second hearing. We're arguing up to the second hearing, from the time they kicked her out to the second hearing, not the first hearing because we don't know whether she got due process. Judge Ackerman vacated that. That held for naught as though it never happened. So that can't terminate her hearing because it was vacated. Counsel, if this court was to affirm the trial court's ruling, wouldn't we essentially be ordering the housing authority to pay benefits or money to this client in which she's not entitled to? I don't agree that she's not entitled to it. I think she is entitled to it. Until a proper hearing where she's allowed due process. Now, if you're going to rule that the termination is retroactive, well, then that's the way you're going to rule. But I think in order to say she's not entitled to it before the determination with due process, then you're saying the termination is retroactive. In order to have more impact, here's what I'm struggling with. Your argument presupposes there was a finding that there was a due process violation in the first hearing before the hearing officer. Right. He's arguing, and there seems to be some support for it, that Judge Ackerman never specifically ruled that there was a due process violation. He ruled there was a procedural snafu, if you will, that certain considerations weren't given, and he wanted there to be a new hearing based on this other case law that had developed. But did he ever rule that the first hearing, that the plaintiff was deprived of due process at any point? No. He never ruled that she was denied due process. What he did rule was that the burden is on the housing authority to provide an adequate record. They didn't provide an adequate record, so he vacated that hearing. The key word is vacated that hearing, or vacated that order. Once it's vacated, it's vacated. They could have done something about that. What? Like what? They could have asked him to reconsider. They could have asked him to clarify. They could have asked to take an interlocutory appeal. There's any number of things they could have done, but they did not. And when he ruled that she was entitled to benefits between those two dates, they didn't do anything about that either. And the issue was raised that we only went to judgment on that last order, and the reason we only went to judgment on that last order was because I couldn't find out how much the benefit was. I had to file a motion to find out how much the benefit was. That motion was filed on 12-17 of 18, and, you know, the Rural Housing Authority revealed a dollar amount of Michelle Key's monthly benefit because they wouldn't tell me. I kept asking the lawyers, how much is she getting? Her mother didn't know. It's very difficult to carry on a conversation with Michelle. I didn't know. She didn't know. Otherwise, I would have asked that it be reduced to judgment, but I kept asking. No answer. Finally, I filed a motion to get the amount, and then I went in and asked that it be reduced to judgment. So, I mean, that's what that delay was about. So it's our position that Michelle Key is entitled to the benefit from the time it was stopped until the time she was given due process, and it was the Housing Authority's obligation to show that she had due process to keep a record, and they didn't. And it's addressed in the briefs, but, you know, I had to hire a court reporter, and then I asked that the Housing Authority contribute to the transcript because it's their obligation to provide a record, and Judge Ackerman, you know, thought that having a court reporter was essential and necessary. So he did order them to pay for the court reporter, but I ended up fronting it. So we're only looking for the period of time between the time her benefits were stopped to the time that the hearing officer ruled against her on a hearing where she was given due process and where the Housing Authority met their obligation of providing an adequate record. Thank you, sir. Thank you. Mr. White. There has been, indeed, no findings that the determination by the Housing Authority that she was not entitled to benefits is incorrect. You will recognize that in Limscombe there was a determination that there was that the record did not support that finding. In this case, we have a remand for the purposes of determining one issue as to whether or not there were mitigating circumstances. This is all based upon, Mrs. Keyes's claim is based upon her claim that she is entitled to due process from the time that she was notified that her benefits would be terminated. And that is based upon the gravamen of the decision in Goldberg v. Kelly. And in that case, the court specifically recognized that there would be an ongoing series of procedures, that there was a fair review provision after that initial determination was made. And what the court says at 266 and 267 is that we agree with the district court that the pre-termination hearing need not take the form of a judicial or quasi-judicial trial. We bear in mind that the statutory fair hearing will provide the recipient with full administrative review according to the pre-termination. Accordingly, the pre-termination hearing has one function only, to produce an initial determination of the validity of the welfare department's grounds for discontinuation of payments in order to protect a recipient against an erroneous termination of its benefits. Thus a complete So was this termination in this case October 31? The determination was made in September to become effective on October 31. Okay. Then what the court says is thus a complete record and a comprehensive opinion which would serve primarily to facilitate judicial review and to guide future decisions need not be provided at the pre-termination stage. And what the court was indicating that in that case were the only opportunity for someone to contest that pre-termination, that pre-termination, termination of benefits, that to contest the termination of benefits was to send a letter. And the court said that wasn't enough. At least let the people come in and have a discussion about it. And that's what was done here. Okay. And the procedural due process deprivation would have occurred if that hadn't happened. The fact that the record is perfect was not perfect and that what Judge Ackerman said, I am not ruling on the merits of this case. I want a more comprehensive record. That's what he remanded that for. And that's part of the post-termination fair hearing procedures to which Goldberg recognized that she would be entitled, that there's going to be something that is more comprehensive in the future. And she was given not only that fair opportunity to be heard and to have a remand and have a reconsideration of how big this record was concerned, but she also got that minimal determination, that opportunity to come in and say, you're wrong about this. Now, that hearing doesn't have to create the record that Judge Ackerman wanted. It just has to give her a better than mail-it-in opportunity to say, hey, hold the phone. But there is, you know, counsel came and gave you many reasons why, because of her, because of Mrs. Key's disability, because of the circumstances of the situation, that she should not have been deprived of the benefits. That determination has been made, and that's the final order. That's not relevant. So now she's saying that we want to have, now I should be paid benefits where there has been a final order that says that I'm not entitled to them. And there is a circumstance in which we say we cannot willy-nilly say, go away. Get out of that house. We're not paying for your house anymore. That's not what happened here. It said, we have made a determination administratively that you didn't comply with these rules and that you were running a disorderly house that's dangerous to this community. We have made that determination. Please come in and tell us what you have to say about that. And you can bring anybody you want, and you can give us any information that you wish. She was given that right. So it was not willy-nilly. Thank you. Thank you. Gentlemen, thank you so much for your arguments here this morning. We will take this case under consideration in a decision we run with the due course. We're in a brief recess.